IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

LAZARUS ORTEGA

      Plaintiff,                              Case No. 2:11-cv-2549 MCE DAD P

   vs.

RUGGIERO, et al.                          FINDINGS AND RECOMMENDATIONS

      Defendant.

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, has filed a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on defendant's motion to dismiss on the grounds that plaintiff failed to exhaust his administrative remedies prior to filing suit as required. Plaintiff has filed an opposition to the motion and defendant has filed a reply.

### I. BACKGROUND

**A. Plaintiff's Complaint**

Plaintiff, a state prisoner at High Desert State Prison ("HDSP") in Susanville, California, is proceeding on an amended complaint against defendant Ruggiero, a Correctional Sergeant at HDSP, for retaliation in violation of the First Amendment. (Doc. No. 11.) In that

1

amended complaint plaintiff alleges as follows. On August 12, 2011, defendant Ruggiero confiscated plaintiff's phone book. (Am. Compl. at 3 ¶ 10(ii).) As his phone book was being confiscated, plaintiff requested a signed property receipt so that he could later file an inmate appeal regarding the incident. (Id. at 3 ¶ 10(iii).) Plaintiff's request caused defendant Ruggiero to become hostile, handcuff plaintiff and escort him to the shower where Ruggiero directed another correctional officer to confiscate the remainder of plaintiff's personal property. (Id. at 3 ¶ 10(iv-vii).) Defendant Ruggiero also told plaintiff that he was going to validate plaintiff as a gang member when he was "done" with him. (Id. at 3 ¶ 10(viii).) While waiting in the shower, plaintiff told D-Yard Facility Captain Chapman, that he "was being retaliated against" by defendant Ruggiero. (Id. at 3 ¶ 10(ix).) When plaintiff was escorted from the shower back to his cell, all of his personal property had been confiscated and no property receipt was given to him. (Id. at 4 ¶ 10(xi).)

**B. Plaintiff's Inmate Appeals**

Plaintiff filed three CDCR Form 602's following this incident. (Am. Compl. at 6 ¶ 15; see also Pl.'s Opp'n to Def.'s Mot. To Dismiss, Ex. 1.) All three grievances were screened out and rejected by the appeals coordinators at HDSP.[1] Plaintiff's first inmate appeal was filed on August 17, 2011, accompanied by a "Rights and Responsibility Statement" which is required when a prisoner is complaining of staff misconduct. (Pl.'s Opp'n, Ex. 1.) This first inmate appeal was rejected by the appeals coordinator by issuance of a 602 Appeal Screening Form dated August 19, 2011, which was accompanied by a "Notification of Rejection of Emergency Appeal." (Pl.'s Opp'n, Ex. 1-2.) That screening form stated that plaintiff's inmate appeal was being rejected because the supporting documents required by California Code of Regulations (CCR), Title 15, § 3084.6(b)(7) were not attached thereto. (Pl.'s Opp'n, Ex. 2.) The screening

---

[1] Whether plaintiff's three inmate appeals were properly screened out and rejected pursuant to the California regulations governing inmate grievances is the question upon which resolution of the pending motion to dismiss turns.

2

form directed plaintiff to refile his inmate appeal and attach his "cell search receipt." (Id.) The notification of rejection stated that plaintiff's appeal did not meet the criteria to be considered an emergency appeal. (Pl.'s Opp'n, Ex. 1.)

Plaintiff resubmitted his inmate appeal form on September 7, 2011, noting that despite his attempt to obtain one, he had never received the requested cell search receipt. (Am. Compl. at 6 ¶ 15; see also Pl.'s Opp'n, Ex. 1.) This second inmate appeal was also rejected by the appeals coordinator on the same day it was submitted, with a response stating that it was being returned to plaintiff because "no adverse effect demonstrated. CCR 3084.6(b)(2)". (Pl.'s Opp'n, Ex. 3.) This second screening form directed plaintiff to "submit an I/M Request or Form 22 to IGI requesting [his] legal property." (Id.)

Plaintiff filed his third inmate appeal on September 22, 2011. (Am. Compl. at 6 ¶ 15; see also Pl.'s Opp'n, Ex. 1.) That submission was accompanied by plaintiff's handwritten "Notice of Default," stating that the appeals coordinator had "refused to acknowledge defendant's alleged misconduct." (Am. Compl. at 6 ¶ 15; see also Pl.'s Opp'n, Ex. 5.) This inmate appeal was also rejected the same day it was submitted by the appeals coordinator for the stated reason that "appellant has attached dividers, tabs. CCR 3084.6(b)(12)." (Pl.'s Opp'n, Ex. 4.) In the comment section the screening form again directed plaintiff to "use Form 22 to resolve this issue" and to "remove the two handwritten pages." (Id.)

**C. Procedural History**

Plaintiff filed his initial civil complaint with this court on September 28, 2011, within a week after his third inmate appeal was screened out and rejected by the appeals coordinator. (Doc. No. 1.) Plaintiff's first amended complaint was filed on April 16, 2012. (Doc. No. 11.) On April 25, 2012, the court determined that plaintiff's amended complaint appeared to state a cognizable First Amendment retaliation claim against defendant Ruggiero.

/////

/////

(Doc. No. 13.)[2]  On August 2, 2012, defendant filed the pending motion to dismiss the amended complaint.  (Doc. No. 23.)

## II.  DEFENDANT'S MOTION TO DISMISS

### A. Defendant's Motion

Defendant Ruggiero argues that plaintiff failed to exhaust his administrative remedies prior to bringing this civil action as required.  Specifically, he contends that plaintiff's failure to pursue his inmate appeal to the second and third levels of review deprived CDCR's Office of Appeals the opportunity to review and address plaintiff's complaints.  (Def.'s Mot. to Dismiss at 4-5.)

### B. Plaintiff's Opposition

In opposition, plaintiff argues that his attempts to exhaust his administrative remedies prior to filing suit were thwarted by the appeals coordinators' improper screening out and rejection of his inmate appeals at the first level, which rendered further administrative remedies effectively unavailable to him.  (Pl.'s Opp'n at 8-11.)  Plaintiff asserts that the rejection of his inmate appeals for failure to attach a property receipt that defendant Ruggiero would not give to him, as well as the instructions in the second and third rejections to file a Form 22 for what was a claim of staff misconduct, were improper and not authorized under the applicable California regulations.  (Id. at 3-4.)  In addition, plaintiff complains that the screening out and rejection of his second inmate appeal on the grounds that he had not demonstrated any "adverse effect" from the confiscation of his property was obviously improper.  (Id. at 4.)  Finally, plaintiff argues that the rejection of his third grievance on the grounds that he had attached two handwritten pages to that inmate appeal and used dividers in his submission was

---

[2]  At that time, the court also found that plaintiff failed to state a cognizable claim against defendant Chapman because Chapman held a supervisorial position and plaintiff had failed to allege a specific causal link between any action by Chapman and any claimed constitutional violations.  (Doc. No. 13 at 2.)  Accordingly, the court did not authorize service of the amended complaint on Chapman and the action is proceeding solely against defendant Ruggiero.

1 also clearly improper. (Id.) According to plaintiff, although he quickly presented each of his
2 three inmate appeals, the appeals coordinators' improper rejections of those appeals at the first
3 level of review rendered administrative remedies effectively unavailable to him because the
4 governing regulations require that such inmate appeals be resolved by prison officials within
5 thirty days. (Id. at 4-5.) Plaintiff contends that it is well-established under Ninth Circuit law
6 that where prison officials screen out inmate appeals improperly, the complete exhaustion
7 requirement need not be satisfied. (Id. at 9-10.)

**C. Defendant's Reply**

Counsel for defendant Ruggiero argues in reply that each of plaintiff's three inmate appeals were properly screened out and rejected by the HDSP appeals coordinators. (Doc. No. 28 at 2-9.) Specifically, defense counsel argues that the rejection of plaintiff's first inmate appeal due to lack of supporting documentation was proper and, in fact, specifically authorized by the regulations governing inmate grievances in California. (Id. at 4) (citing Cal. Code Regs. tit. 15, § 3084(h) ("Supporting documents means documents that are needed to substantiate allegations made in the appeal including . . . property receipts . . . .") and § 3084.3).[3] Defense counsel also argues that the screening out and rejection of plaintiff's second and third inmate appeals with directions to utilize the Form 22 process was proper because such an action is specifically authorized by California Code of Regulations tit. 15, §§ 3086(e)(2). Defense counsel observes that had plaintiff submitted that form as directed it would have either resolved his complaint or provided him with documentation to facilitate the processing of his inmate appeal. (Id. at 6-7.) In any event, according to defendant, had plaintiff submitted the Form 22 as directed he would have been free to resubmit his inmate appeal. (Id. at 7.)

/////

---

[3] Moreover, defendant argues that it was unclear from plaintiff's first inmate appeal whether he had been provided no property receipt or merely an unsigned property receipt at the time of the property confiscation he was complaining about. (Reply at 5.)

1  Counsel for defendant Ruggiero does acknowledge that plaintiff's inmate "appeal
2  included both a complaint about staff behavior and a complaint about his confiscated legal
3  property" but contends that it is for prison officials to determine whether an inmate appeal is
4  processed as a staff complaint pursuant to California Code of Regulations Title 15, §
5  3084.9(i)(1). (Id. at 8-9.) Therefore, defense counsel argues, the appeals coordinators'
6  decisions to direct plaintiff to pursue relief through the Form 22 process before addressing his
7  inmate appeal was proper under the governing regulations. (Id.) Defendant concludes by
8  asserting that in this case plaintiff simply failed to pursue the administrative process to which he
9  was directed and failed to exhaust his administrative remedies prior to filing suit as required.

### III.  LEGAL STANDARDS

By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42
U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions
under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative remedies as are available are
exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits
about prison life, whether they involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532
(2002).

The United States Supreme Court has ruled that exhaustion of prison
administrative procedures is mandated regardless of the relief offered through such procedures.
Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against
reading futility or other exceptions into the statutory exhaustion requirement. Id. at 741 n.6.
Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA
exhaustion requirement by filing an untimely or otherwise procedurally defective administrative
grievance or appeal. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). The Supreme Court has
also held that "to properly exhaust administrative remedies prisoners 'must complete the

1  administrative review process in accordance with the applicable procedural rules,' [] - rules that
2  are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549
3  U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568
4  F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the
5  boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

6  The PLRA exhaustion requirement is not jurisdictional but rather creates an
7  affirmative defense.  See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or
8  demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th
9  Cir. 2003).  The defendants bear the burden of raising and proving the absence of exhaustion.
10 Wyatt, 315 F.3d at 1119.  The defendant's burden of establishing an inmate's failure to exhaust
11 administrative remedies, however, has been characterized by the Ninth Circuit as "very low."
12 Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The defendant need only show the
13 existence of a grievance procedure the plaintiff did not use.  Id. (citing Hilao v. Estate of Marcos,
14 103 F.3d 767, 778 n.5 (9th Cir. 1996) and Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir.
15 2005)).

16 Once the defendant has met his burden of showing that the plaintiff did not utilize
17 administrative remedies, the burden shifts to the plaintiff "to demonstrate that the grievance
18 procedure was unavailable." Albino, 697 F.3d at 1032.  In this regard, the Ninth Circuit has held
19 that where a prisoner can "show that he attempted to exhaust his administrative remedies but was
20 thwarted by improper screening[,]" he may be excused from complying with the exhaustion
21 requirement.  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  This is because in such a
22 case, "the inmate cannot pursue the necessary sequence of appeals, and administrative remedies
23 /////
24 /////
25 /////
26 /////

are therefore plainly unavailable." Id.[4]  See also Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that inmate's failure to exhaust his administrative remedies was excused because he took reasonable steps to present his claim to prison officials and was precluded from exhausting his administrative remedies, not through his own fault but due to the prison warden's mistake in referring him to an inapplicable Program Statement).

If the district court concludes that the prisoner has not exhausted administrative remedies with respect to a claim presented in a civil action and is not excused from doing so, "the proper remedy is dismissal of the claim without prejudice." Wyatt, 315 F.3d at 1120. See also O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1059 (9th Cir. 2007); Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress through three levels of review. See id. § 3084.7. The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and

---

[4] The Ninth Circuit explained in Sapp:

> In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

623 F.3d at 823-24. The court also noted that "[a]t the same time, this exception does not alter prisoners' incentive to pursue administrative remedies to the extent possible." Id. at 823.

exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Unless exempted, all appeals must initially be submitted at the first level and screened by the inmate appeals coordinator. See id. § 3084.7(a). The second level of review is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level. See id. § 3084.7(b). The third level of review is generally for review of appeals not resolved at the second level. See id. § 3084.7(c).

Pursuant to the governing California regulations, at the first and second levels of review, the original inmate appeal shall be returned to the appellant with a written response to the appeal issue providing the reason for each decision. See id. § 3084.7(h). Each response is to accurately describe the matter under appeal and fully address the relief requested. Id. At the first level of review, the inmate appeals coordinator may reject an appeal for any of those reasons enumerated in subsection 3084.6(b). See id. § 3084.6(a). The second level review must be completed prior to the appellant filing at the third level of review. See id. § 3084.7(b).

With respect to inmate appeals alleging prison staff misconduct, California Code of Regulations Title 15, § 3084.5(b)(4) states:

> When an appeal is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard that could be considered misconduct as defined in subsection 3084(g), whether such misconduct is specifically alleged or not, the matter shall be referred pursuant to subsection 3084.9(i) . . ., to determine whether it shall be:
>
> (A) Processed as a routine appeal but not as a staff complaint.
>
> (B) Processed as a staff complaint appeal inquiry.
>
> (C) Referred to Internal Affairs for an investigation/inquiry.

An inmate appeal alleging misconduct by a departmental peace officer must be accompanied by a Rights and Responsibility Statement. Id. § 3084.9(i). "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days." Id. § 3084.9(i)(3). "Only after the appeal has been reviewed and categorized as a staff

9

1   complaint by the hiring authority or designee shall it be processed as a staff complaint." Id. §

2   3084.9(i)(1). When an appeal that is classified and accepted as a staff complaint includes other

3   non-related issues, "the appeals coordinator shall notify the inmate that any other appeal issue(s)

4   may only be appealed separately and therefore resubmission of those issues is required if the

5   intention is to seek resolution of such matters." Id. § 3084.9(i)(2). See also Id. § 3084.5(b)(5).

## IV.  ANALYSIS

7           As indicated above, it is undisputed in this case that plaintiff did not pursue his

8   inmate appeal through the third level of review. However, plaintiff contends that the appeals

9   coordinators three times improperly screened out and rejected his inmate appeals at the first level

10  of review, thereby rendering administrative remedies effectively unavailable to him and excusing

11  his failure to exhaust under the holding in Sapp. Counsel for defendant takes the position that

12  the screening out of plaintiff's three first level appeals was proper and authorized by the

13  governing regulations and that plaintiff's failure to follow the appeals coordinators' directions

14  does not excuse his failure to exhaust.

15          The rejection of plaintiff's first inmate appeal on the grounds that he failed to

16  submit supporting documentation was authorized by the regulations governing inmate grievances

17  in California. See Cal. Code Regs. tit. 15, §§ 3084(h) ("Supporting documents means documents

18  that are needed to substantiate allegations made in the appeal including . . . property receipts

19  . . . .") Moreover, the court concludes that defendant has accurately characterized plaintiff's first

20  appeal as not clearly indicating whether plaintiff was asserting that he had not been provided a

21  property receipt at all or merely that he had been given an unsigned property receipt at the time of

22  the property confiscation about which he was complaining. Thus, it was appropriate for the

23  appeals coordinator to instruct plaintiff to resubmit his first inmate appeal with available

24  documentation and the rejection of that inmate appeal was proper. (Pl.'s Opp'n, Ex. 2) ("Attach

25  your cell search receipt. Not emergent.")

26  /////

The question of whether the rejection of plaintiff's second and third inmate appeals at the first level of review was proper under the governing California regulations is a closer question. As noted, plaintiff's second inmate appeal was screened out and rejected by the appeals coordinator at the first level because "no adverse effect[5] demonstrated CCR 3084.6(b)(2)" with a direction to "submit an [inmate] request or Form 22 to IGI requesting your legal property." (Pl.'s Opp'n, Ex. 3.) As also noted, plaintiff's third inmate appeal was screened out and rejected at the first level of review because he had "attached dividers, tabs CCR 3084.6(b)(12)," again with a direction to "[U]se Form 22 to resolve this issue. Send Form 22 to IGI. 2nd Notice. Remove the two handwritten pages." (Pl.'s Opp'n, Ex. 4.)

It is difficult to imagine what more plaintiff could have alleged in his grievance with respect to the adverse effect he claimed to have suffered as a result of defendant Ruggiero's alleged actions. Plaintiff claimed that his property including his telephone book had been improperly seized, he had been cursed at and threatened with an unsupported gang validation if he filed an inmate grievance. Thus, the court finds that the appeals coordinator's rejection of plaintiff's second inmate appeal at the first level due to "no adverse effect demonstrated" was improper and unsupported by the governing regulations. However, that inmate appeal was also screened out with direction to plaintiff by the appeals coordinator to submit a Form 22 in order to address the issue.

Filing a Form 22 initiates the written request process set forth in the California Code of Regulations, Title 15, § 3086. The objective of this written request process is to obtain a "timely resolution of routine matters through an effective and non-conflictive communication process." Id. § 3086(a). The pamphlet entitled "The New CDCR Form 22 for Inmates" informs prison inmates that the Form 22 need not be submitted before an inmate appeal is filed but may

---

[5] "Material adverse effect means a harm or injury that is measurable or demonstrable, or the reasonable likelihood of such harm or injury. In either case the harm or injury must be due to any policy, decision, action, condition or omission by the department or its staff." Cal. Code Regs. tit. 15, § 3084(c).

be required to document the action or decision the inmate is appealing.  (Pl.'s Opp'n Ex. 8.)  Indeed, title 15, § 3086(e)(2) of the California Code of Regulations, specifically authorizes an appeals coordinator to reject an inmate appeal with instructions to complete the request form process before resubmitting an inmate appeal.  That is exactly what the appeals coordinator did in screening out plaintiff's second inmate appeal at the first level of review.

        Plaintiff argues that he did not comply with the appeals coordinator's instruction to file the Form 22 because the screening directive did "not at all address . . . [his] staff misconduct claim[.]"  (Pl.'s Opp'n at 3.)  However, the issue is not whether all of plaintiff's complaints were fully addressed in the screening form.  Rather, the only relevant question is whether plaintiff was prevented from pursuing his inmate appeals with respect to his grievance.  See Barrett v. Cate, No. 1:09-cv-01741 LJO JLT (PC), 2011 WL 6753993, at *10 (E.D. Cal. Dec. 23, 2011) (plaintiff should not be excused from the exhaustion requirement where he failed to present any evidence that he used the grievance procedure to challenge the screening decision, or to show that prison officials thwarted his efforts to utilize the prison grievance procedure).  The record before the court establishes that he was not thwarted in his ability to do so.

        The court notes that § 3086(e)(2) also provides that "the inmate . . . is not precluded from filing an appeal on the same issue prior to receiving a response to their written request."  A California inmate has thirty days to correct and resubmit his inmate appeal after it was last rejected by the appeals coordinator.  Cal. Code Regs. tit. 15, § 3084.6(a)(2).  In this case, plaintiff was instructed to file a Form 22.  The written request process begins when the Form 22 is completed and given to the appropriate prison employee.  See id. § 3086(c).  The employee has three working days to make a decision and return the form to the inmate.  See id. § 3086(f)(1)-(4).  If the inmate disagrees with that decision he may submit the form to the employee's supervisor.  See id. § 3086(g).  The supervisor has seven calender days to make a decision and return the form to the inmate, at which time the written request process is complete.  See id. § 3084.6(g) and (h)(1)-(4).  Therefore, in total, the Form 22 process may have taken plaintiff

approximately ten days to complete. Thus, plaintiff could have easily completed the written request process he was directed to pursue by the appeals coordinator long before the thirty days permitted to resubmit his rejected inmate appeal had run. He could have then appropriately pursued his grievance through the third level of review if dissatisfied with the responses of prison officials. Under these circumstances, it cannot be said that plaintiff has met his burden of establishing that the grievance procedure was rendered unavailable to him. See Albino, 697 F.3d at 1032.

This is not a case where plaintiff was instructed that there was nothing else for him to do to exhaust his remedies or where he was caught in a Catch-22 of repeatedly winning relief in response to inmate appeals only to watch prison officials fail to implement that relief. See Womack v. Bakewell, No. CIV S-09-1431 GEB KJM, 2010 WL 3521926, at *4-5 (E.D. Cal. Sept. 8, 2010). Rather, here the record reflects that plaintiff was given direction to employ the Form 22 process before pursuing an inmate appeal. He obviously disagreed with that directive, perhaps believing it to be unnecessary, a delaying tactic or even calling for a futile act. In response, he unilaterally decided to forego the administrative grievance process. To do so under these circumstances, however, does not excuse his failure to exhaust the available administrative remedies that remained readily available to him. See Ellis v. Camra, No. 2:10CV5642005 AWI SMS P, 2005 WL 2105039, at *5 (E.D. Cal. Aug. 30, 2005) ("Frustration with the process is understandable. However, if there is a process available, it must be utilized, regardless of how tiresome or trying."); Womack, 2010 WL 3521926, at *5 (same); Lipsey v. Reaume, No. CV 08-7515-DOC (JEM), 2010 WL 3397046, at *7 (C.D. Cal. July 23, 2010) ("Plaintiff has not demonstrated that he has taken 'reasonable and appropriate steps' to exhaust administrative procedures. Filing defective informal appeals and failing to file a formal first level appeal, either initially or after his informal appeals were returned or ignored, are not 'reasonable and appropriate steps.'"), adopted by 2010 WL 3419668 (C.D. Cal. Aug. 25, 2010); Rice v. Milson, No. CV 10-00716 JHN (RZ), 2010 WL 4916640, at *3-5 (C.D. Cal. Oct. 15, 2010) (prison

officials' delay in responding to grievance did not justify plaintiff's abandonment of the administrative process); Harrison v. Morring, No. C 10-3701 RS (PR), 2011 WL 2446309, at *2 (N.D. Cal. June 17, 2011) (where plaintiff's grievances were screened out in a manner consistent with the applicable regulations, his failure to complete the third level of review was not justified by his alleged inability to submit necessary supporting documents as directed by the appeals coordinator).[6]

## CONCLUSION

For the reasons set forth above, the undersigned finds that defendant Ruggiero has met his burden of demonstrating that plaintiff failed to exhaust his administrative remedies prior to filing this civil action as required under § 1997e(a). Plaintiff did not exhaust through the third level of review and has failed to carry his burden of establishing that administrative remedies were rendered effectively unavailable to him. Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion to dismiss (Doc. No. 23) be granted and that this action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are

/////

/////

---

[6] Despite a great deal of experience with the inmate appeal process in California, the undersigned does note that the Form 22 process provided for by the regulations is not a familiar one. If a showing were made that an appeals coordinator was abusing that process for the purpose of thwarting an inmate in the pursuit of his grievance through the more regularly employed three levels of formal review, the excusing of exhaustion under the Ninth Circuit's decision in Sapp may well be appropriate. Here, however, plaintiff has made no such showing.

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD: 13
orte2549.MotDiss.F&R